**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NARTRON CORPORATION,
a Michigan corporation,

        CASE NO. 05-70323
   Plaintiff,        HON. LAWRENCE P. ZATKOFF

v.

TUTHILL CORPORATION,
a Missouri corporation,

   Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 25, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff Nartron's Motion for Partial Summary Judgment and Defendant Tuthill's Motion for Summary Judgment. Defendant has responded to Plaintiff's Motion and has replied to Plaintiff's response. Plaintiff has responded to Defendant's Motion and has replied to Defendant's response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is GRANTED, in part, and Defendant's Motion for Summary Judgment is GRANTED, in part.

**II. BACKGROUND**

Plaintiff Nartron Corporation ("Nartron") is an electrical engineering and manufacturing firm located in Reed City, Michigan and is a tier-two automotive supplier. Defendant Tuthill Transport Technologies ("Tuthill") is a tier-one automotive supplier and is engaged in the design and manufacture of suspension systems for the truck and trailer industry.

As part of Ford Motor Company's "P131" Product Program, a program involving commercial grade Ford Trucks, Tuthill was named the component parts supplier for the truck suspension systems. In particular, Tuthill contracted with Ford to design the suspension systems for the Ford F-350, F-450, and F-550 Series Trucks. Because of the intended commercial use, the trucks needed their suspensions to be raised and lowered electronically.

Tuthill contacted Nartron and requested a quote on the design and creation of an "electronic height control system" which would be used on the P131 project. Nartron prepared an "Initial Quotation" for Tuthill's requested project. On April 11, 2000, Nartron submitted an "Amended Quotation," which included a commitment to manufacture 35,000 production parts a year at a cost of $68.34 per unit. Additionally, Nartron included in its quote a price for fifty prototype parts and fifty production intent prototypes, as well as tooling to mass produce the parts and quality control testing. Also included with Nartron's Amended Quotation was a list of its standard terms and conditions. The following day, on April 12, 2000, Nartron and Tuthill signed a Long-Term Agreement where Nartron agreed to sell, and Tuthill agreed to buy, all of the "Product" required by Tuthill over the next three years.

Eventually, Tuthill issued a purchase order for the prototypes as well as purchase orders for the testing work proposed in the Amended Quotation. *See* Exhibit 9. Thereafter, Nartron began the design and manufacture of the height sensor control system prototypes for Tuthill. Nartron also

2

conducted the various testing of the prototypes in order to comply with industry and Ford standards. Nartron asserts that all of the testing specified in Tuthill's purchase orders was completed by April 2001, but that it had not yet invoiced Tuthill for the testing because it was waiting until the height sensor control system was in production. *See* Exhibit 11. In September 2001, however, Ford cancelled the entire P131 Project. Consequently, on September 26, 2001, Tuthill informed Nartron of the project's cancellation and informed it to immediately stop all work on the P131 project.

Nartron ceased work on the project, and on October 15, 2001 submitted invoices to Tuthill for approximately $150,000 of work which had been completed but which had not yet been paid. Nartron also invoiced Tuthill for over $800,000 in tooling fees, as well as obsolescence fees, and various travel costs. *See* Exhibit 13. By a December 17, 2001 letter to Nartron, Tuthill agreed to pay approximately $115,000 of Nartron's invoices as soon as all of Tuthill's tooling was returned. *See* Exhibit 16. Despite the return of the tooling, Tuthill chose not to pay Nartron's invoices due to the poor condition of the returned tooling. Ultimately, in an attempt to collect on the unpaid invoices, Nartron brought the present action for breach of contract and *quantum meruit*.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard,

the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

The parties' cross-motions for summary judgment raise numerous issues before the Court regarding Plaintiff's claims of breach of contract and *quantum meruit*. The Court will address these issues individually in the following sections, deciding whether summary judgment is appropriate for either party, or whether there are genuine issues of material fact which must be decided by a jury.

**A. Breach of Contract**

In every case of breach of contract, the first questions for the Court to consider are (1) whether a contract existed between the parties, and if so, (2) what are the terms of that contract? *See*

*In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).  In the present case, it is undisputed that the parties entered into a Long-Term Agreement on April 12, 2000 with Nartron as the Seller and Tuthill as the Buyer.  Pursuant to this Agreement, the parties made the following commitments:

> Nartron is committed to support Tuthill's continued growth and leadership in the truck and specialty vehicle suspension business.  Nartron commits to deploy resources to create unique competitive advantages exclusively for Tuthill in this business in exchange for Tuthill's commitment to actively pursue a dominant market share position with Nartron's products specific to this agreement.

Plaintiff's Motion for Summary Judgment, Exhibit 2.  Additionally, over the three-year term of the Agreement, the parties agreed to the following:

> Subject to the terms of this agreement, the seller agrees to sell, and the Buyer agrees to purchase one hundred percent (100%) of the Buyer's production and service requirements for the products specifically covered by this agreement as indicated by attachment A ("Product").

*Id*, ¶ 1.

Accordingly, pursuant to the Long-Term Agreement, Tuthill agreed to buy all of its product requirements from Nartron, and Nartron, as the seller, agreed to meet Tuthill's requirements.  Both parties agreed that the Agreement would run for a minimum of three years.  The Agreement does not address what would happen if Tuthill's requirements fell to zero, so presumably, as long as Tuthill's requirements fell in good faith, and as long as it maintained its commitment "to actively pursue a dominant market share position with Nartron's products," it would not be in breach of the Agreement.

When Ford cancelled the P131 project in September 2001, Tuthill contacted Nartron and told it to immediately stop all work on the P131 project.  Nartron stopped its work and soon invoiced Tuthill for various amounts it believed it was owed under the Long-Term Agreement.  Nartron brought the present breach of contract action when Tuthill refused to pay the invoices.  In the

following sections, the Court will address each of Nartron's breach of contract claims.

**1. Tooling Fees**

Nartron has issued invoices to Tuthill seeking over $800,000 in tooling fees. *See* Defendant's Motion for Summary Judgment, Exhibits H and M. Nartron asserts that it incurred $813,502 in general tooling fees for its purchases of the tooling necessary to produce the electronic height sensor systems. *See id*. Nartron also asserts $25,155 for "socket ball tooling." *See id*. Due to Tuthill's failure to pay its invoices, Nartron now asserts that it is entitled to those fees as reliance damages for Tuthill's breach of the Long-Term Agreement. Nartron argues that Tuthill breached the Long-Term Agreement by failing in its commitment "to actively pursue a dominant market share position with Nartron's products." *See* Long-Term Agreement, Exhibit 2. Specifically, Nartron argues that Tuthill breached the Agreement by failing to pursue sales of the electronic height sensor system in any other suspension system market. *See* Plaintiff's Response Brief, at 16.

In response, Tuthill asserts that it has not paid the invoices for tooling fees because Nartron never issued a purchase order for the tooling. Accordingly, Tuthill argues that there is no valid contract for the tooling. *See* Defendant's Motion for Summary Judgment at 16; *see also* Defendant's Reply Brief at 4.

Tuthill's argument misses the mark. If Tuthill breached the Long-Term Agreement, Nartron is entitled to reliance damages regardless of whether it issued any invoices for such damages and regardless of whether Tuthill issued any purchase orders. *See Earl Dubey & Sons, Inc. v. Macomb Concrete Corp.*, 81 Mich. App. 662, 680 (1978) (permitting the recovery of reliance damages as a remedy for breach of contract). Accordingly, the definitive question is not whether Tuthill issued any purchase orders for tooling fees, but whether Tuthill breached the Long-Term Agreement when,

based on Ford's cancellation of the P131 project, it informed Nartron to cease all work on the project. Nartron asserts that Tuthill breached the Agreement by failing to pursue sales of the electronic height sensor system in any other suspension system market. Tuthill denies that it breached this portion of the Agreement. Besides the bald assertions and denials of the parties, however, there is no evidence before the Court as to whether Tuthill breached this portion of the Agreement. Accordingly, the Court finds that there remains a genuine issue of material fact as to this issue, and that whether Tuthill breached the Agreement by failing to "actively pursue a dominant market share position with Nartron's products" is a question for the jury. For this reason, both parties' Motions for Summary Judgment regarding the tooling fees and socket-ball tooling are DENIED.

**2. Unpaid Purchase Orders for Testing Fees**

Following Ford's cancellation of the P131 project, Nartron issued three invoices for a total of approximately $150,000 in testing fees. These invoices related to three purchased orders (7640, 7664, and 7995) issued by Tuthill in 2000 in which it agreed to pay $94,475 for Design Validation and PPAP, $37,550 for PV Validation Testing, and $15,750 for Life Test. *See* Plaintiff's Motion for Summary Judgment, Exhibit 9. Nartron asserts that it completed this testing in April 2001, prior to the September 2001 cancellation of the P131 project. *See* Exhibit 10, April 26, 2001 e-mail from Nartron to Tuthill.

In its response brief, Defendant Tuthill denies that it owes Nartron for any of the testing and asserts that it has not received any proof that the projects were actually tested prior to the project's cancellation. *See* Defendant's Response Brief, at 16. Tuthill also places great emphasis on the fact that Nartron did not submit its invoices for the testing until after the project was cancelled, and that

Nartron remained in position of certain pieces of Tuthill's tooling.. *See id*.; *see also id.* at 9.

Tuthill's denials and its refusal to pay these purchase orders seems to the Court to be somewhat disingenuous. Tuthill's own Senior Project Engineer, Christopher Batz, confirmed in a December 6, 2001 internal e-mail that Nartron had completed the PV Testing and the Life Test and should be paid for the work. *See* Exhibit 14. Batz also explained that he believed Nartron had completed 33 out of 44, or 77.3% of the design verification tests. Following this e-mail, Tuthill contacted Nartron and offered to pay 77.3% of the design verification invoice and to pay in full for the PV Testing and Life Test as soon as Nartron returned Tuthill's tooling. *See* Exhibit 16, December 16, 2001 letter from Tuthill to Nartron.

Based on these facts, the Court finds that there are no genuine issue as to any material fact that Nartron completed the PV Testing ($37,550) and Life Test ($15,750) and should be paid for this work. Accordingly, Nartron's Motion for Partial Summary Judgment should be GRANTED as to these two claims. Because Tuthill disputes that Nartron successfully completed the design verification tests, questions of fact remain as to this claim and both parties' Motions for Summary Judgment should be DENIED. *See* Exhibit X, pp. 48, 62.

**3. Unpaid Purchase Order for Expediting Fees**

Nartron asserts that Tuthill issued a purchase order in the amount of $19,700 for the production of ten prototypes on an expedited basis. *See* Exhibit 20. Nartron asserts that it completed these prototypes by the delivery date but was never paid the expedited fee for this order. *See* Exhibits 21, 22. Tuthill responds by asserting that Nartron failed to earn the expedited fee because it failed to deliver the parts by the December 6, 2000 deadline.

Though it is undisputed that Nartron failed to deliver the parts by December 6, 2000, Nartron

8

asserts that the deadline was extended and that it delivered the parts by the extended deadline. *See* Exhibit 21. Because there is a question of fact as to whether Nartron delivered the parts on time and in an expedited fashion, both parties' motions for summary judgment should be DENIED as to this issue.

### 4. Obsolescence Fees

Nartron asserts that it is entitled to obsolescence fees pursuant to the following term included in the April 11, 2000 Amended Quotation: "in the event of cancellation, buyer will be responsible for all raw materials purchased for the subject item plus any labor and burden costs applied to the product." Though there is no dispute that this term was included in Nartron's Amended Quotation, Tuthill never agreed to this term. In response to Nartron's Amended Quotation and its standard terms and conditions, Tuthill issued a purchase order which included its own terms and conditions. In such a situation, where there is a so-called "battle of the forms," Section 2-207 of the Uniform Commercial Code ("UCC") governs and determines which terms become part of the agreement. UCC § 2-207 states:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

MCL § 440.2207(1). In the present case, both Nartron's and Tuthill's forms make acceptance conditional on assent to the additional or different terms. *See* Nartron's Terms and Conditions[1],

---

[1] "This document contains all the terms and conditions of the contract between Seller and Buyer. The transaction of business following receipt of this document constitutes express acceptance of the terms herein. Terms contained in Buyer's orders are expressly rejected and shall not bind Seller or invalidate any terms contained herein. Terms and conditions shall not be modified except upon Seller's written request and full Agreement therewith."

Exhibit 8; *see also* Tuthill's Terms and Conditions[2], Exhibit Z.  Accordingly, UCC § 2-207(3) applies, which states:

> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

MCL § 440.2207(1).  Pursuant to this section, and because the conduct of the parties clearly recognizes the existence of a contract, the terms of the contract consist only of those terms on which the writings of the parties agree.

Applying this rule to the present dispute over obsolescence fees, it becomes clear that the obsolescence fees term was not a part of the contract because Nartron's and Tuthill's forms do not agree as to this term.  Accordingly, Nartron's claim that it is contractually owed obsolescence fees because the term was included in its Amended Quotation fails as a matter of law.  Accordingly, Tuthill's Motion for Summary Judgment should be GRANTED as to this claim.

Nevertheless, though Nartron is not entitled to obsolescence fees based on the term's inclusion in the Amended Quotation, Nartron may still be able to recover its obsolescence fees as reliance damages based on its claim that Tuthill breached the Long-Term Agreement.  Because the question of whether Tuthill breached the Long-Term Agreement is a question of fact for the jury

---

[2] "Acknowledgment of this order must be made at once on the attached form which will constitute Vendor's acceptance of all conditions stated herein.  Any changes, alterations or deviations from the above terms and conditions shall not be acceptable to [Tuthill] unless expressly consented to in writing by its duly authorized representative.  Any requests by Vendor for changes, alterations or deviations from the above terms and conditions shall be expressly stated in writing in Vendor's acknowledgment of this order.  Acceptance of this purchase order shall constitute consent by Vendor to the terms hereof and shall supersede all previous agreements."

(see section 1 above), the Court cannot definitely resolve Nartron's claim for obsolescence fees at this time.

### 5. Attorney Fees

Nartron asserts that it is entitled to recover the costs and attorney fees it has incurred in seeking payment from Defendant Tuthill. Nartron relies on the following provision of the April 11, 2000 Amended Quotation:

> Buyer agrees to pay seller, in addition to all other sums hereby received, all legal and other expenses incurred by seller in collecting any monies due from the buyer to the seller under the terms and provision of this agreement and all legal and other expenses incurred by or on behalf of the seller in any dispute relating to their agreement.

The Court's analysis as to the attorney fees term is the same as that given in Section 4. Though there is no dispute that the attorney fees term was included in Nartron's Amended Quotation, Tuthill never agreed to this term, and pursuant to UCC § 2-207, it should not be considered as part of the contract. Accordingly, Plaintiff's claim for attorney fees fails as a matter of law. For this reason, Defendant Tuthill's Motion for Summary Judgment should be GRANTED as to this claim.

### 6. Travel Costs

Nartron asserts that it is entitled to recover various travel costs which it has incurred throughout its Long-Term Agreement with Tuthill. *See* Plaintiff's Response Brief, at 16. Following the cancellation of the Ford P131 project, Nartron invoiced Tuthill for these travel costs. *See* Plaintiff's Reply Brief, Exhibits 31 and 32. Tuthill disputes that it owes these costs and has refused to pay.

In support of its claim for travel costs, Nartron asserts that there was an agreement between the parties so that Nartron's travel costs would be reimbursed. As support, Nartron refers to the

deposition testimony of Nartron employee John Washeleski, who testified that "[b]ecause of the huge costs of sending people to meetings, [ ] we weren't going to send them without authorization knowing that we would get reimbursed." *See* Plaintiff's Response Brief, Exhibit 30, at 77. Nartron also refers to the following June 23, 2000 e-mail sent from Tuthill to Nartron, which explained that Nartron should "[b]e able to document and support these items to Ford (Ron Smith) so we can all be compensated at some time." *See id*, Exhibit 39.

In response, Tuthill asserts that there was never any blanket agreement to reimburse travel costs, and that the only time Tuthill reimbursed Nartron's travel costs was when Nartron issued a quotation for such costs, followed by a purchase order from Tuthill. *See* Defendant's Motion for Summary Judgment, Exhibits K and L. As evidence that there was no agreement for the reimbursement of travel costs, Tuthill also points to the fact that Nartron's travel costs were incurred from March 2000 to February 2001, but that Nartron failed to submit invoices for these expenses until after Ford cancelled the P131 project in September 2001. Tuthill argues that this indicates that Nartron never expected to be reimbursed for these costs. *See* Defendant's Motion, at 6. As further support, Tuthill refers to the deposition testimony of Tuthill employee Larry Dalton, which indicates that he never issued a blanket authorization for Nartron's travel costs. *See* Defendant's Motion, Exhibit AA.

After reviewing the evidence and arguments of both parties, the Court finds that there is a genuine issue of material fact as to this issue. Accordingly, the question of whether there was an agreement for the reimbursement of Nartron's travel expenses should be determined by the jury. For this reason, both parties' Motions for Summary Judgment should be DENIED as to this issue.

Additionally, regardless of whether the parties entered into a specific agreement for travel

12

expenses, if Nartron is able to show that Tuthill breached the Long-Term Agreement, Nartron may be able to recover the travel costs as reliance damages.

**B. Quantum Meruit**

In addition to its claims for breach of contract, Plaintiff Nartron also asserted claims of *quantum meruit* in its Complaint. Tuthill asserts in its Motion for Summary Judgment that Nartron's claims of *quantum meruit* should be dismissed because there are express contracts covering the subject matter. *See Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment.").

The Court agrees with this principle as expressed by the Sixth Circuit, but recognizes that *Terry Barr* also permits a Plaintiff to pursue a *quantum meruit* action where one of the contracting parties disputes the existence of the express contract between the parties. In the present case, Tuthill disputes the existence of various express contracts regarding obsolescence fees, travel fees, and tooling fees with Nartron. Accordingly, so long as Tuthill disputes the existence of these express contracts, Nartron is entitled to proceed with its *quantum meruit* claims in the alternative. For this reason, Defendant Tuthill's Motion for Summary Judgment as to this issue should be DENIED.

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS Plaintiff Nartron's Partial Motion for Summary Judgment, in part, and HEREBY GRANTS Defendant Tuthill's Motion for Summary Judgment, in part.

IT IS SO ORDERED.

        s/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated:  May 25, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 25, 2006.

        s/Marie E. Verlinde
        Case Manager
        (810) 984-3290