UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NARTRON CORPORATION,
a Michigan corporation,

        CASE NO. 05-70323
Plaintiff,        HON. LAWRENCE P. ZATKOFF

v.

TUTHILL CORPORATION,
a Missouri corporation,

Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff Nartron's Motion for New Trial.  Defendant has responded to Plaintiff's motion and Plaintiff has not replied within the time allowed under E.D. MICH. LR 7.1(d)(2).  The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted.  For the reasons set forth below, Plaintiff's Motion for New Trial is DENIED.

## II. BACKGROUND

### A. Facts

Plaintiff Nartron Corporation ("Nartron") is an electrical engineering and manufacturing firm located in Reed City, Michigan and is a tier-two automotive supplier. Defendant Tuthill Transport Technologies ("Tuthill") is a tier-one automotive supplier and is engaged in the design and manufacture of suspension systems for the truck and trailer industry. On April 12, 2000, the parties entered into a Long-Term Agreement where Nartron agreed to sell, and Tuthill agreed to buy, all of the "Product"[1] required by Tuthill over the next three years. In September of 2001, Tuthill informed Nartron that Ford had cancelled the P131 Project, a project related to commercial grade Ford Trucks, and that Nartron should immediately stop all work related to the P131 Project.

Nartron ceased work on the project, and on October 15, 2001 submitted invoices to Tuthill for approximately $150,000 of work which had been completed but which had not yet been paid. When the parties could not come to an agreement on the payment of the outstanding invoices, Nartron brought the present action for breach of contract and *quantum meruit*. As part of its claim, and in addition to claims for payment of various unpaid invoices, Nartron asserted reliance damages of over $800,000 for tooling fees incurred under the Long-Term Agreement.

### B. Procedural History

Nartron brought its Complaint on January 28, 2005. Over the following months, the Court issued a scheduling order and the parties conducted discovery. On March 31, 2006, Defendant Tuthill moved for Summary Judgment and Plaintiff Nartron moved for Partial Summary Judgment.

---

[1] The "Product" contemplated by the Long-Term Agreement was an electronic height control system which would be used in the suspension systems of certain commercial grade trucks.

On May 25, 2006, the Court issued an Opinion and Order which granted, in part, Defendant's Motion for Summary Judgment, and also granted, in part, Plaintiff's Motion for Partial Summary Judgment. In effect, by this Opinion, the Court determined that there remained questions of fact which should be decided by a jury at trial. A jury trial commenced on July 24, 2006, and on July 28, 2006, the Jury returned a verdict in favor of Plaintiff Nartron. As its verdict, the jury awarded $117,884.18 in damages for breaches of contract related to the Ford Project. The jury also determined that Tuthill breached its Long-Term Agreement with Nartron, but the jury determined that Nartron suffered no monetary damages as a result of this breach. Plaintiff Nartron brought the present Motion for New Trial as a result of the jury's award of no damages for the breach of the Long-Term Agreement.

### III. LEGAL STANDARD

Rule 59(a) of the Federal Rules of Civil Procedure states: "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." The Supreme Court has stated that the authority to grant new trials under Rule 59(a) "is large" and that authority to grant a new trial exists "if the verdict appears to [the judge] to be against the weight of the evidence." *See Gasperini v. Ctr. For the Humanities, Inc.*, 518 U.S. 415, 433 (1996) (citations omitted).

In diversity cases, both federal and state law are applied to determine whether to grant a new trial. *See Adam v. J.B. Hunt Transport, Inc.*, 130 F.3d 219, 224 (6th Cir. 1997). "Rule 59 governs the procedural issue of whether to grant a new trial, and the law of the forum state, Michigan in this

case, determines the substantive question of whether a challenged verdict is inadequate or excessive." *Tezak v. Montgomery Ward & Co., Inc.*, 33 Fed.Appx. 172, 176, 2002 U.S. App. LEXIS 6010 (6th Cir. 2002) (citing *Adam*, 130 F.3d 219).

## IV.  ANALYSIS

Plaintiff Nartron asserts that a new trial should be granted because the jury found that Tuthill had breached the Long-Term Agreement, but nevertheless awarded $0 in damages as to this claim despite having heard the unrebutted testimony of Nartron's witnesses regarding its alleged reliance damages of $813,502.  Based on this, Plaintiff argues that the jury's verdict was against the clear weight of the evidence.  The Court disagrees.

Plaintiff places great weight on the fact that the testimony of its witnesses John Washeleski and Norm Rautiola regarding the $813,502 of reliance damages was "unrebutted" and "uncontradicted."  The jury need not accept every piece of direct evidence, however, simply because that evidence is unrebutted or uncontradicted.  In the present case, the sole evidence offered by Plaintiff in support of its claim of $813,502 in reliance damages was the trial testimony of its witnesses John Washeleski and Norm Rautiola.  Mr. Rautiola, the founder, owner, and president of Nartron, offered the bulk of the testimony on this issue.  Mr. Rautiola explained that he had calculated Nartron's reliance damages as $813,502 but that there was no documentary evidence to support this figure because Nartron did not expect to have to bill Tuthill for these tooling fees and accordingly, Nartron prepared no invoices categorizing its tooling fees.

Though Mr. Rautiola's testimony was not rebutted or contradicted by any of Defendant's witnesses, the jury is not required to find Mr. Rautiola's evidence to be credible.  Determination as

4

to a witnesses credibility are entirely within the province of the jury. In fact, the Court specifically instructed the jury as to this in the joint Jury Instructions:

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.
> In assessing credibility, you should consider each witness's intelligence, motive, state of mind, demeanor, and manner while on the stand. Consider each witness's ability to observe the facts as to which he has testified and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which each witness is either supported or contradicted by other evidence in the case.
> Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.
> After making your own judgment, you will give the testimony of each witness such weight as you determine it deserves.

After hearing Mr. Rautiola's and Mr. Washeleski's testimony regarding Nartron's reliance damages, the jury ultimately decided not to award these damages. The jury's decision may have reflected its belief that Mr. Rautiola was not credible due to his interest in the outcome of the case, or perhaps it reflected the jury's skepticism that no documentary evidence existed in support of the fees. Regardless of the jury's reasons, the jury's decision to award $0 as reliance damages was not against the weight of the evidence and was permissible based on the instructions it was given by the Court regarding the credibility of witnesses.

In support of its argument, Plaintiff relies on three Sixth Circuit cases in which new trials were granted on the issue of damages where the jury's verdict was against the great weight of the evidence. However, the cases Plaintiff cites are readily distinguishable from this case. Plaintiff relies on two cases where the decision to grant a new trial was based on Kentucky tort law. *See*

5

*Adam*, 130 F.3d 219; *Dejesus v. Julie A. Adkins, P.A.-C*, 46 Fed.Appx. 244, 2002 U.S. App. LEXIS 17959 (6th Cir. 2002).

In *Adam*, the court of appeals reversed the district court's decision denying a new trial where the plaintiff presented substantial evidence of his injuries and damages. *See Adam*, 130 F.3d at 232. There, the plaintiff was injured in a car accident, which also killed his wife and daughter. *See id.* Despite substantial evidence regarding the plaintiff's injuries, which included multiple head injuries, hospitalization in the intensive care unit, medical bills and residual physical effects, and the fact that the defendants conceded that the plaintiff had suffered significant injuries, the jury awarded him $0 in damages. *See id.* After the trial court denied the plaintiff's motion for a new trial, the court of appeals reversed. *See id.* The court found that under Kentucky law, where a plaintiff is substantially injured, he need not prove damages. *See id.* In light of the substantial evidence that the plaintiff was injured and the defendants' concession, the court of appeals found that the jury's verdict was inadequate, and remanded the case for new trial on the issue of damages. *See id.* at 232.

Similarly, in *Dejesus*, the court of appeals reversed the district court's ruling denying a new trial. *See Dejesus*, 46 Fed.Appx. 244. Like *Adam*, the court of appeals' decision was based on Kentucky tort law. *See id.* Just as in *Adam*, the plaintiff in *Dejesus* presented substantial evidence that he suffered from a serious personal injury, rendering proof of damages unnecessary under Kentucky law. *See id.* Consequently, when the jury awarded the plaintiff $0 in damages, the court of appeals did not hesitate to grant the plaintiff a new trial because, under Kentucky law, "an award of no damages is improper where a compensable injury clearly exists." *See id.* at 246.

In contrast to both *Adam* and *Dejesus*, the Court's decision to grant or deny a new trial in this case is based on Michigan contract law, which requires the plaintiff to affirmatively prove damages.

6

*See Kelly v. Builders Square*, 465 Mich. 29, 34 (2001).  Unlike *Adam* and *Dejesus*, where damages would be presumed upon a showing of severe injury, Michigan contract law requires the plaintiff to prove damages even if it has already shown a breach.  *See id.*  Thus, the results in *Adam* and *Dejesus* are not relevant to the outcome of this case. As stated above, in this case the jury did not have to accept the testimony Plaintiff presented on the issue of damages, even if it was "uncontroverted."

Finally, Plaintiff compares this case to another Sixth Circuit decision where a new trial was granted when the jury ignored a damages stipulation and jury instruction that the stipulation was to be considered a proven fact.  *See Tezak*, 33 Fed.Appx. 172.  In *Tezak*, the parties stipulated that the plaintiff had incurred medical expenses totaling $67,523.  *See id.*  Based on the stipulation, the trial court instructed the jury that the plaintiff's "medical bills to date as a result of this incident total $67,523."  *See id.* at 175.  Nevertheless, the jury disregarded the stipulation and related jury instruction and awarded $0 in damages.  *See id.*  The court of appeals found the jury's award "inadequate on its face," in light of the instruction to accept the stipulation as a fact in the case.  *See id.* at 177.

In stark contrast to *Tezak*, the amount of Plaintiff's damages in this case were not a fact. Unlike the present case, in *Tezak*, once the jury found the defendant liable, the plaintiff's damages, at least to the extent of his medical expenses, were a proven fact.  In this case, however, Plaintiff had the burden to prove its damages to the jury, and the jury was instructed that it could award damages *if* Plaintiff met its burden.  *See* Jury Instructions at 19.  While Plaintiff argues that Defendant did not present contrary evidence, Plaintiff fails to recognize that the jury was completely free to reject the testimony of Plaintiff's witnesses whether or not it was contradicted.  Testimony need not be

7

contradicted in order for a jury to disbelieve it. Furthermore, Plaintiff did not present any documentary evidence of damages, but relied only on witness' testimony. Hence, the jury in this case could have reasonably concluded that Plaintiff did not meet its burden to show damages. Consequently, the jury's award of $0 in damages in this case is not against the weight of the evidence. Accordingly, the Court is not persuaded that it should interfere with the jury's conclusion, and, therefore, Plaintiff's request for a new trial is denied.

## V. CONCLUSION

For the above reasons, the Court HEREBY DENIES Plaintiff Nartron's Motion for New Trial.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: October 4, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 4, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290